v. Edwin D. Mason, et al. This appeal comes here from a summary judgment on the statute of limitations. It is the plaintiff not to comport with the way this Court and the Supreme Court of Illinois have treated these claims. I understand this is the no-vote review. On the other hand, I think it is important to mention at the outset that the trial judge below said because a lay person was aware that a company was still in business and would remain in business, that that began the running of the statute of limitations. The case law in this area that we cite and that, candidly, the defendants cite simply takes a completely different approach. Well, what is the approach that you're advocating, counsel? Because I don't understand from what you've just said. What is the issue precisely that we have to decide? Are you saying a cause of action accrues is a question of fact? Is that what you're saying? And therefore, it is immune from summary judgment? Or can we say it's a question of law under these facts, and therefore, the trial judge got it right? What we're saying, Justice Garcia, is this. Unless, in the words of the Lucy case and the Warnock case and all the other ones after that, unless it is perfectly obvious that there was only one point in time when everybody knew exactly what was going to happen, then it is a question of fact for the jury. I think that's what the cases say, and I think that's what they mean. In the Jackson case... So let's go ahead and get to the crux of it. What are at least the two points in time that you believe exist in this case? The one point in time we have from the defendants, we know what they're saying. What is the point in time that you say should begin the running of the clock, from your side? Our argument from the plaintiff's side is the clock does not begin to run until the trial judge in the Lozman v. Putnam case enters a judgment against my clients. Sounds like you're talking about a question of law as opposed to a factual question. You're saying that until a judgment is entered, an element is missing from your attorney malpractice allegation? Is that what you're saying? Absolutely. The Lucy case defines damages. So it's a question of law as opposed to a question of fact? Well, obviously it depends on the context in which it comes up. Not every case involves a situation... What kind of instruction would you be advocating that the jury receive regarding when the cause of action accrued? Is it a special interrogatory? Well, the instruction that should be given is what the statute says. That the statute begins to run when the plaintiff knows or should have known, A, that the lawyer committed malpractice and, B, that he suffered actual damages or the company suffered actual damages that are directly attributable to the negligence of the lawyer. I mean, that's what the case is saying. So you're not going to be able to give them any... Well, let me change and ask you, what's your argument going to be to the jury in terms of when that point in time is? Our argument to the jury is going to be as follows. Mr. Lozman, one of my clients, was a layperson. The person who committed the breach of fiduciary duty and usurpation of corporate opportunity was the president of the company. He, until a jury or judge tells him that he's not allowed to recover, which is what every one of these cases say, Warnock, Learning Curve Toys, Lucy, then he hasn't suffered the type of damages that begin the running of the statute of limitations. He hasn't had a judgment entered against him and he hasn't been forced to settle. That's what the Lucy case says. That sounds like an element of the cause of action, which I think sounds like a question of law as opposed to a question of fact. If it's a question of law, why shouldn't the judge make that determination and why shouldn't we review it de novo and say the judge got it right? Well, the cases we cite, Justice Garcia, talk about the adverse judgment accrual, that the claim begins to run when there's an adverse judgment against the client. They also discuss that rule in the context of the discovery. And they fit that adverse judgment component in on the issue whether you knew you had suffered damages attributable to the lawyer. Refresh my recollection. So what happened in this triggering cause of action case? I thought it went against your client. It did go against my client. So if it went against your client, why did your client suffer any damages at that point? Well, my client's theory of that case was that his former co-shareholder, director, what he called partner, but what really isn't partner, had diverted the whole business away from him. Right. Okay. In this legal malpractice case, we allege that Foley and Lardner helped Mr. Putnam divert the business away from him. And that's my point. I thought you were suggesting some sort of case within a case, and if you win the case against this individual, then it gives rise to a cause of action against the lawyer that helped this individual. But your client lost that case. So either your client had a cause of action before that cause of action was instituted, or he lost it because the two-year statute of limitations ran. Why isn't that a valid point? Because that wasn't the ground on which my client lost that case. All right. This court ruled, this court affirmed the trial judge in Lozman v. Putnam on the ground of latches. That's an affirmative defense, obviously. Both the jury and the trial judge found that Mr. Putnam had, in effect, stolen the business. But latches also might suggest something sinister for your statute of limitations claim that never started to run, but it did run. Well, I don't think in this context it did, because Judge Goldberg applied what's called the objective standard of latches, the reasonable person standard, and said even if, even if the plaintiff didn't have knowledge of specific facts, a reasonable person in his position knew enough to know to sue Putnam. Now, the objective standard of latches doesn't translate into knowing that the corporate lawyers did this or did that. In fact, the testimony in this record shows that the corporate lawyers deliberately withheld information from Mr. Lozman on the ground that they owed a duty of confidence to Mr. Putnam about all matters regarding Terranova Trading. Now, they never disclosed to my clients that they were conflicted and had some duty to Mr. Putnam that prevented them from telling Mr. Lozman what was going on. And I would love to reserve the rest of my time, if the Court would permit me. Well, once you receive the adverse judgment, that triggered the nature and extent of your damages, didn't it? Absolutely, Your Honor. Once... Well, why don't you give us a little bit more detail on that point? What were your damages? Well, the damages in the Lucy framing that are directly attributable. There's damages and then there's damages attributable to the lawyer's negligence. The damages attributable to the lawyer's negligence were... So basically what you're saying, it sounds to me, that you're going to have to have a whole new trial to determine whether Putnam really did cheat your client out of those assets. And if he did, he did it with the aid of the lawyers that represented Putnam. Well, the first trial said Putnam cheated my client out of their assets. The issue became after, in post-verdict motions, was there an affirmative defense that barred the result of that, which was found to be the case. But it's established that Putnam did that. There's no doubt about it. Now, I don't see, obviously, the role... So let's go back to my original question. Yes, sir. What were your damages? The damages were... Attributable to counsel, the defendant attorneys. The damages were when Foley undertook to represent Blue Water Partners. It committed to make it a broker-dealer as a company, as a stand-alone company, and to obtain for it the copyright and licensing right to the trading software that was going to be used to promote the broker-dealer. The business plan was give customers the software, they'll give you their commissions. Foley undertook to make Blue Water a broker-dealer and to get copyright assignments from the software. It did neither. It not only didn't make Blue Water a broker-dealer, it affirmatively attempted to prevent it from being a broker-dealer by going to the SEC at the request of Mr. Putnam and asking the SEC for an exemption from the broker-dealer registration requirements for Blue Water. So it did the opposite of what it committed to do. Then it drafted a software back in exchange for stock, and it never consummated that transaction. So when all the dust settled, Blue Water, its original client, long before Terra Nova was even incorporated, its original client was left with no broker-dealer business and no protected software interest that it could license, sell, or do anything with. It didn't own the software thanks to the failure to get Exhibit 10 executed and revised as it should have been. So when the defendant tells you, well, Blue Water changed its business purpose. It was just going to be a licensor of software. We dispute that, but they didn't even protect the license, so it could be a licensor of software. So it lost its interest in a broker-dealer business, and when it was left by itself, it had no software to market to anyone because it didn't own the software that was created by virtue of the Townsends, Putnam, and Blue Water getting together in business. Now, the damages in this case are substantial. The broker-dealer business ended up being worth many millions of dollars. So the damages, to answer your question, Justice Garcia, are the failure to perfect the interest of that business and to protect the software. And when would that have occurred? When were the damages realized? When did the attorneys have the authority to have consummated that transaction? Or stated negatively, when did they get fined? When did they get fired? So beyond that point, they couldn't have done anything. Well, the relationship ended in July of 1995. Our expert, Professor Hazard, said at that point, Foley has a duty to sit down with the client and have an exit interview and say, here's what we did for you, here's what we didn't do, here's what rights you have, here's where you're at. And the testimony was, Mr. Mason handed my client the minute book and said goodbye. And did your client know at that point that Terranova or Blue Water, whichever, didn't have the broker license that you thought that they should have? Nobody knew that? No. My client knew that Terranova had been created as a corporate layer under Blue Water to protect the towns and programmers from tax liability and what's called debit liability. If some person had $100,000, they didn't want to be liable for it. That's what my client knew. So this notion about eliminating Terranova, he knew that the bottom layer had been cut out. That had nothing to do with whether Foley had made the top layer what they committed to make the top layer and whether they had done their job in making Blue Water what it was supposed to be. Now, according to... I apologize. According to... I'm in the red light here. Go ahead. According to Lucey in these other cases, until he files the Lozman v. Putman case and loses that case, then he's not... Lucey said the damages are entirely speculative until there's an adverse judgment. Let me ask you this question. Of all those cases that you've just cited, Lucey and the Luzman, the loss of the lawsuit triggered a cause of action against a party not involved in that lawsuit. I mean, I can understand where if you lose a lawsuit and you say you're the attorney that represented you did such a poor job that I lost the lawsuit because my counsel committed malpractice during the course of the cause of action. But is there a case that says the loss of a lawsuit triggers a cause of action against a lawyer that has long ended the relationship that once existed? Well, the last part is an interesting qualifier because the Learning Curve case was a case that was a trade secret case in the federal court. It was tried between the two toy companies and the Learning Curve loss got hit for a $6 million judgment. This court said two and a half years ago that the adverse judgment for $6 million didn't make the statute of limitations begin to run, even though their lawyers had told them not to settle the case, that the fees would be less than any judgment. And this court said, well, no, no, no. The trial judge entered a judgment NOV. They took away the verdict. So even though the Learning Curve knew there might be a problem, that they were at risk until there actually was a definitive judgment, the statute didn't begin to run. Now when the Seventh Circuit vacated the judgment NOV and reinstated the $6 million jury verdict, this court said in the Learning Curve case, now the statute begins to run because the Learning Curve company has suffered actual demonstrable damages by having the $6 million judgment entered against it. The lawyers weren't party to that case, Justice Garcia. So that made the claim against those lawyers ripe, which was thereafter filed in this court. And by the way, this on that very ground. Again, good morning. William Cahill for the Defendant's Appeals. I argue the Learning Curve case. The Learning Curve case is a trial negligence case. And in fact, what happened is that the plaintiff there was accusing the lawyers of losing the case at trial. They suffered an adverse jury verdict, but Judge Pallmeyer reversed it under Rule 50 and they won the case. And the question was, did that cement them to statute of limitations? But the point is, it's a trial negligence case. Justice Garcia, your question on accrual raises this issue. What is the claim being made here and when were the injuries sustained from it? If you go to the malpractice case, it's really clear. This is an ownership claim. The claim is the lawyers and Mr. Putnam formed two companies, Blue Water first with Mr. Lozman as a co-partner, and then Terranova second without them. And the claim was, including the appeal before you, is Mr. Lozman sometimes says personally, sometimes he says through Blue Water, that they should have also been an owner of Terranova. So the claim here for accrual purposes is, when was the wrongful act of the formation of Terranova occurring? And it's not disputed in this record, it's November 94. When did the injury occur? Loss of ownership was a matter of law. The injury occurs on loss of ownership. And there's one of the cases... Aren't there various causes of action involved? If you look at the complaint, the paragraph 14A through E or whatever it is, where they say you breached your duty, it's all about the formation of Terranova without Mr. Lozman or his company, part of his company, Blue Water being listed as an owner. So his claim was, I should have been an owner. Your opinion of that last appeal, you recited that. You said he claimed he had a world promise for Mr. Putnam to be a part of an owner of Terranova and Mr. Putnam breached the promise. One of the oddities of this case is, how does that get to the lawyers? Because it's not disputed in the record, the lawyers were never told about that. My clients were never told that he was promised this ownership interest. But back to the point of accrual, that's the accrual thing. Next question is, what's the discovery date? Well, you'll agree that if they would have won the other case, there may not be a cause of action against the lawyers, right? Well, if... Here's what the Lucy and all those cases are about. If they lost the underlying case because of bad advice by the defendants, and that advice was tested in litigation, you may have a claim. But the Putnam litigation had nothing to do with any advice that Foley Lardner ever gave to anybody. The case that you wrote your opinion on was about, was there a normal promise? Was there a release? Did the jury and Judge Goldberg reach the correct result that that release was unconditional? And Judge Goldberg found laches. You then took laches. Laches presumes you have knowledge of your claim. So how could you have a record where as you sit down and settle and release your case in October 95, and that was not about my clients, that was Mr. Lozman for Blue Water, Mr. Putnam for himself and Terranova, and they looked at all the claims that Lozman and Blue Water then said they had, including this failed ownership claim, the failed broker-dealer status of Blue Water, and they settled, they traded consideration. Basically the trade was, Putnam, you take Terranova, go your way, I, Lozman, will take all of Blue Water. So Mr. Putnam gave up half his ownership, and I'll go my way. Well you know the interesting thing, and tell me about this, the appellant argues facts, you argue facts, this is a motion for summary judgment that was granted, don't we have factual issues here? Is that what we're all talking about, factual issues? You have the most powerful weapon a defendant would like to have in a case which is collateral stop. You tried that case, you lost that case, you can't come back and say, in fact, Justice Gordon, this is an aiding and abetting case. The claim in this malpractice case is pretty unusual if you look at it, it's aiding and abetting, joint tortfeasors. This is like saying, I have two joint tortfeasors, I'm going to take my shot at joint tortfeasor number one, and depending on what happens, I'll come back and sue joint tortfeasor number two, who says, wait a minute, the statute of limitations is right. And the plaintiff says, well, no, I had this trial I had to engage in. Well that doesn't get you anywhere. All we're talking about is, who do they want to recover their alleged damages from, which the jury and the trial court found in the Putnam case did not exist. So I think the point is, this is not an issue where you're ever going to find a factual dispute. In fact, the independent of collateral stop will, what we tried to do in front of Judge Hogan, which of Mr. Lozman, all the elements of this statute of limitations claim, his discovery, his knowledge, how could he say, it wasn't at the time I settled my case and released it with Mr. Putnam, which of course, as you know, had no lawyers involved. But I did not know I was not an owner of Terranova. When I gave Terranova to Mr. Putnam, I said, go free. And your Lachey's case said, how could you make a claim based on what Terranova did after that release, when in fact, you agreed to have Terranova go out and be unencumbered by any claim you make. So this case. So what you're telling me is that your opponents aren't telling the truth. Isn't that a factual issue? Let me interrupt. I think, Mr. Cahill, what you're saying is that it is a factual question, but the facts only point in one direction. Discovery, of course, obviously could be a factual question. And I know the cases that I say, look, on statute of limitations, you better have a very strong... These facts only lead to one conclusion. Because of two things. That platter of stock of findings that you used as part of your opinion. Judge Goldberg said, at the time of October 95, which is three years before the statute runs in our case, this plaintiff, Lozman in Bluewater, knew all material facts regarding their claim. That's a quote. That's how you supported the Lachey's claim. Of course he knew his claim. How can he now say, the very claim he made against Putnam, I should have been an owner of Bluewater. The claim he makes against the lawyers, you should have made me an owner of Bluewater. How can that claim exist if it didn't exist then? If it didn't survive that event, is what I meant to say. It doesn't. So whether you look at this as final estoppel, which I think is a very powerful hammer in this case. I've never had one as strong as I've had in this case. Or you look at the undisputed fact records of what this plaintiff admitted for himself. You've got all the elements of a cruel discovery. We haven't answered any questions, but that's our case. Rebuttal. The appellee tells us there's no question of fact here. What do you have to say about that? Well, if I were the appellee, I don't mean to be facetious, Justice Gordon, but obviously I would argue that. I don't see how. Well, let's go a little bit, let's be a little bit more, let's rely on what already exists in the record. And that is our prior decision in this case, in which we found Lachey's. And counsel's argument is that Lachey's presumes knowledge on the part of Blue Water. And if they had knowledge in that case, they had to have knowledge as to their cause of action against the lawyers that assisted Putnam. Two points, Justice Garcia. First, the reason that presumption, and the reason that Well, it's beyond a presumption now. I mean, we're talking, as he indicated, collateral estoppel. We're talking about an opinion by Justice Gordon. Absolutely. And Justice Gordon affirmed, Judge Goldberg, who said under the reasonable person standard of Lachey's, even if, as appeared to be the case, the plaintiffs had no knowledge of the facts, on an objective basis, there was enough that should have led them to bring the claim against Putnam. That is not any knowledge as to what Foley and Lardner did or did not do. It's knowledge as Are you saying that Putnam and Foley can be separated from each other? Absolutely. I thought they were, one was representing, Foley was representing Putnam and therefore acted at his direction. And you can't have a cause of action against a lawyer without having that lawyer do something in favor of the client. Winston and Strawn represented Putnam at the trial in Lozeman versus Putnam with some other lawyers. Foley was not trial counsel in any case. Foley was We're talking about the creation of Terranova. Foley incorporated Terranova at the same time that it represented Blue Water Partners. Blue Water was 50% Lozeman, 50% Putnam. At the same time that it represented that entity, it incorporated Terranova to be owned 100% by Putnam without disclosing the details. As a matter of fact But what did we hold in terms of Putnam's knowledge of that creation of Terranova in our first decision? That he reasonably should have known on an objective standard? As to the creation of Terranova, this court said that Judge Goldberg did not abuse his discretion in entering a laches finding. Well, legally that finding is that he was barred by laches. And if he was barred by laches, I can't see how you can hold a lawyer responsible for acting at the direction of this very same individual. The difference is the lawyer had a duty to the company. The lawyer represented Blue Water Partners. But I'm not saying that there is no duty there. I'm saying that Blue Water, to the extent it knew what Putnam was doing, Putnam was only acting through its lawyers, therefore Blue Water had to know what Foley was doing. Actually the testimony of Mr. Simon, the partner of Foley and Larger was Putnam sometimes acted through them and sometimes chose not to act through them. He sometimes returned calls and sometimes didn't. So our position is knowledge as to what Putnam was doing or not is not knowledge as to what these lawyers did and that the damages did not accrue until the times we say in our brief. And I appreciate the Court's time and ask to rely on the remaining arguments in our brief. Thank you very much. You've given us a very interesting case and we'll take it under advice.